Good morning, Your Honor. George Wallace appearing on behalf of the appellant Lone Star Security and Video, Inc. This case comes before the court on appeal from a denial of an application for a preliminary injunction, and in ruling upon that application, Judge Wright of the District Court applied the traditional and required analysis, examining whether there had been a showing of likelihood of prevailing on the merits and the prospect of irreparable harm if injunctive relief was not granted. The court found that if the statutes and ordinances under consideration are in fact unconstitutional, the resulting harm would be irreparable. However, the court denied the preliminary injunction on the ground that Lone Star had not demonstrated a likelihood of success. And the stated basis for the court's determination that there was not a showing of likelihood of success was the court's distinction between advertising as an activity and advertising as a species of speech or content. And this is where, in our view, the error was committed by the District Court. Let's say we agree with you on that point, but we nonetheless construed the definition of mobile billboard advertising display to apply to all signs regardless of message. Do you lose? No, Your Honor, because to preclude a message of any kind is an even greater imposition on the exercise of free speech than... Well, it's content neutral. That's for sure. Well, it's not content neutral in the sense that if there's content, you're going to be punished. You can analyze this in part by taking a sliding scale or a spectrum of examples. We take the simplest of non-mobile vehicles that might be parked somewhere, just a pair of wheels and a platform, basic trailer. Under this statute and under these ordinances, you can park that non-motorized vehicle anywhere in any of these cities that you can otherwise park any other vehicle. Let's suppose now that you take your simple trailer and you add to it an upright panel. You either weld it to the chassis or you just carry it on the trailer as you would carry other cargo. Again, that trailer can be parked anywhere in the city. There's no message on it whatsoever. No message on it whatsoever. Now, suppose that you add to that a picture of a Brussels sprout, beautiful picture of a Brussels sprout, a picture that expresses nothing other than a Brussels sprout. Now, I think we would all concur that that doesn't fall under any ordinary understanding of advertising. Sure. Well, that's what I'm putting to you, that let's say we construed it to cover that. You display anything on the sign or the billboard, it's covered by this and it's banned. Well, I don't think you can construe it under the language that's actually been used because the specific language three times uses the word advertising to prohibit the particular type of content that can't be on this vehicle. We have a decision by the State Court of Appeal in the showing animals respect case, right, to mean advertising in the sense of just displaying a message of any sort, commercial, non-commercial, doesn't matter. Am I misinterpreting what the Court of Appeal held in that case? The Court of Appeal in that case did not really address the question of whether or not the statute would be subject to this sort of an attack. The problem is if you define advertising as any variety of speech, then you have really defined advertising far beyond any understanding that anyone has ever had of that word. Advertising by its nature separates out one type of speech from another and it is not reasonable to construe the language actually used by the legislature or used by these cities to have meant by the word advertising anything that might reasonably be construed as speech. You also have the problem that if you say you can't put speech on any non-motorized vehicle and park it anywhere in the city of Los Angeles, you are taking speech and signage off of an awful lot of vehicles. A parked U-Haul trailer, for example, with the U-Haul logo on it or a picture of one of the exotic places you might take it is unlawful under these ordinances if you construe advertising to be any sort of speech. It may be unlawful anyway. The definition that the Court of Appeal seemed to rely on from the Merriam, I guess they quoted the Merriam-Webster's definition of advertise. They say the definition of advertise is more general. It's not just limited to talking about a product or promoting something. It says to make something known to, to make publicly and generally known, to announce publicly, especially by a printed notice or broadcast. They construed it as applying to any display of any kind of message out there. No, it's a more limited subset of messages. It is a message that is actually meant to be received and acted upon, acknowledged by the recipient. It's something that someone is supposed to see and respond to as opposed to a totally neutral sort of speech. And I'm with you that that is one very natural reading of advertise, but I guess my problem with your argument is that we have a State Court of Appeal decision that seems to reject that more narrow reading of advertise and adopts as a matter of State laws, presumably, this broader reading, which avoids some of the constitutional problems that you otherwise want us to confront. Well, I don't think that the construction of the term advertising in that case really can be extended so far as the Court seems to be wanting to do. Here, as these ordinances are written, you cannot reasonably construe the language actually used to mean, thou shalt not put any form of speech ever anywhere on a non-motorized vehicle and park it anywhere in the city of Los Angeles. It simply does not bear that construction as a matter of ordinary English. There is no special definition of the term. Advertising displays are apparently distinctive from some other sort of display. Otherwise, why do you use the modifier advertising? If they simply said, thou shalt not put any symbols, writing, pictures, anything at all other than bare paint on a non-motorized vehicle and park it in the city, then we could – then it would be open to exactly the construction the Court is proposing. But here, the way that the terms of the statute are phrased, it is clearly distinguishing advertising displays from some other undefined sort of display. And that is a distinction that is based entirely upon characterizing the content of an advertising display as being different from the content of a display that we're going to be deeming not to be advertising. I would propose that my Brussels sprout picture doesn't satisfy the definition of advertising under this statutory structure. Unless you're selling Brussels sprouts, I guess. Well, and that's where we go next. Suppose that instead of the picture of the Brussels sprout, you put up the text of your Aunt Gracie's wonderful recipe for Brussels sprouts. Now, I think we're in a gray area because we have text. We're conveying information about how to prepare Brussels sprouts. I suppose it's open to the interpretation, I'm recommending that this is how you should prepare Brussels sprouts. It's very unclear under the statute whether that would be violative or not. If you go to the next stage and put up the text, eat at Aunt Gracie's International House of Brussels sprouts, now we are clearly into the realm of advertising. But we're in the realm of advertising because eat at Aunt Gracie's is a different sort of content than the sprout itself or the recipe for preparing the Brussels sprouts. And if we go a further step, we put up our picture of a Brussels sprout and a message from the Department of Health and Human Services, eat your Brussels sprouts, they're good for you. That is clearly advertising. But I would venture to say that that is not advertising that the state or the cities actually intended to target by this statutory and ordinance structure. So I think that we do have here a case in which content that we can call advertising and content that is something else that can't be called advertising have been segregated out. And the presence or absence of content has been offered up as a distinction without a justification. We are quashing all varieties of speech and we are distinguishing within varieties of speech simultaneously and that is not permissible in the absence of being necessary to a compelling state interest. Now the cities have consistently cited aesthetics and traffic safety and if there's a well-settled rule in First Amendment law, it is certainly that aesthetics and traffic safety are significant interests for public entities. But they are not the compelling interests that are necessary to be cited in support of a content-based regulation. And this is exactly that sort of regulation because it segregates out advertising as reasonably understood from any other sort of content. Now maybe the bulk of content in the world is advertising but somewhere out there, there is content that isn't because the state and the cities have felt obliged to utilize the term advertising to characterize and modify the word display. If they want to prohibit displaying anything other than the bare paint on a non-motorized vehicle anywhere in the city of Los Angeles, I don't know why they would. But that would be a content-neutral regulation. It would be one that would get a great deal of squawking from a great deal of people who have cause to have content on their vehicles. That isn't advertising necessarily. But it would certainly be a content-neutral regulation. That's not what we're presented with here, however. Is your challenge a facial challenge? The challenge as it was framed before the district court was presented as a facial challenge. Every instance. That as this is. Every application of this. That was the attack. That as written, particularly with the definition of mobile advertising billboard display, this is a facially unconstitutional enactment. Now we also addressed in the district court the question of over breadth because these ordinances by definition operate citywide. So the entirety of however many square miles, vast number, encompasses the city of Los Angeles. These vehicles aren't legal there anywhere. No matter how obscure the backwater in which they are parked, you just can't park them there. And you can't park them there because they carry content. They are not functionally different from any other identical trailer or other device or bicycle other than the fact that they have content on them. So it is specifically targeting a particular category of content. And it is doing it on a vastly over broad basis. If I may, I can reserve the remainder of my time. If there's any questions the court would like answered immediately, I'd be happy to. Thank you. Thank you. Let's see who we're going to hear from first. Good morning, Your Honors. Jules Zeman on behalf of the city of Rancho Cucamonga. I'd like to select about seven minutes and leave the rest of the time for my colleagues, Ms. Erickson, Mr. Buchanan, and Mr. Holdaway to the extent that they wish to address the court. I agree that the picture of Brussels sprouts is advertising. I think it's all advertising. I think a painted billboard is advertising depending on what color is used. I think a picture of President Obama is advertising. I think counsel in his brief, in both the opening brief and in his reply brief, have indicated that it is as broad as the Webster's Merriman definition. Advertising display is a term of art. And what the cities in this case have sought to do is eliminate this one manner of transmittal of information, of messages. It is content neutral completely, 100%. There's no dispute about that. You say that it's going to apply to any sign no matter what's on there. As long as it's not a blank sign, it's going to be covered? That's how you're construing it? Exactly, Your Honor. So the U-Haul truck can't park it on the street? Well, the U-Haul truck is not a billboard in a non-global situation. These are situations where they have a sign that's not related to the purpose of the vehicle. It's a trailer, right? It's a trailer. But attached to a mobile, some sort of vehicle. Exactly. And then historically, and I think Mr. Holderway can speak to this even better than I can, they take the wheels off and they take the vehicle off and it's just the trailer. And it's a billboard and it contains something. It contains a message to inform the public, to make an announcement. Just married is an advertising display. Anything that communicates, anything that informs. I don't think, I think counsel takes the issue and construes it way too narrowly in the sense that he says that it seeks to elicit a response. I think what he's really trying to say is that you're focusing only on commercial transactions. You're giving an announcement to do something, to react, to provide something. So under the ordinance, these ordinances, a sign that said, Read the Bible, is also prohibited. I agree. I think it applies across the board to everything, which is why it doesn't prefer commercial speech over non-commercial speech. It doesn't regulate non-commercial speech. It doesn't regulate anything really except to get this blight off the streets and to protect safety and aesthetics. What steps would a law enforcement officer need to perfect in order to determine whether or not the ordinance was, any of these ordinances were violated? That's a great question, Your Honor. I think all that an officer, an enforcement individual would have to do is to look to see that there's a billboard on a non-mobile or formerly non-mobile vehicle and determine that there's signage there. That's it. It really doesn't have to determine with precision or even without precision that it's non-commercial speech, that it's commercial speech, that it's intending to cause a reaction in an individual. It doesn't have to determine anything other than identifying that there it is on a public street. So as simple as it can be without any discretion whatsoever. And as Your Honors are certainly aware, there are many cases that have indicated that just because an office, an enforcement officer needs to make some determination by taking a peek at the content, that doesn't necessarily make it a non-constitutional ordinance or statute. But here there's nothing for the enforcement individual to do except identify that it's that which was targeted by the ordinance to remove from public streets. I would be happy to address any questions the Court may have. If not, I'll turn it over to my colleagues if they wish to take over. Thank you, Your Honor. We'll see who's up next. Mr. Good morning, Your Honors. Joseph Buckman on behalf of the city of Santa Clarita. I don't have much to add to Mr. Zeman's comments. I would question, though, appellant's argument that there is this something else other than advertising or messages that would be on a sign or billboard on a non-motorized vehicle parked on the side of the road. I've had a loss to imagine something that somebody would want to put on a sign in such a location that would not be advertising or a message, some kind of communication. I don't know what that would be. So I think the ordinances following the state law are narrowly tailored to get rid of the visual blight, to improve the aesthetics, improve traffic safety without impinging on any other kind of speech that is something else. I just want to make sure I'm clear. So you guys are construing, meaning the cities, you guys are construing these ordinances to basically apply unless the thing is just a blank sign. If it's got anything on it, it's going to be prohibited? That's how you're interpreting this? If it's this type of a device, I mean, it's a non-motorized trailer parked on the side of the road with a sign or a billboard on it, and that's all it is, all it's doing is to move the sign to one place. But if it's got any content on the four corners of the thing that's attached to this trailer, whatever it is, as long as it's covered by the physical definition of the structure, you're saying if it's got any content on it, it's banned? Yes, Your Honor. And you guys are going to have your officers out there towing these things away, even if they've got the number two written on a big sign. I don't know why anyone would do that, but if it's got it, your officers are going to be out there towing those things away. If somebody did that, they would be in violation of the ordinance. If there's no other questions, I'll submit. Okay, so, all right, that's fine. So let's see, anything from City of Loma Linda? Yes, my name is Richard Holdaway, City Attorney for the City of Loma Linda, and I'll be very brief. I maybe have a little different take on the function here that we're talking about. I don't believe that the content has anything to do with these regulations, either the presence of content or the absence of content. I think these regulations are a tool that was given by the state legislature to address a specific problem of parking these trailer vehicles on public streets and taking up parking and endangering the public who's passing by. I believe that a sign may have all sorts of messages, or it could be built without a message yet. We've all driven by billboards on the freeway where the structure is there, but the message has not been placed yet. I think if we apply that concept to this situation, the trailer with the big sign on it parked on the street, maybe the message hasn't been affixed to it yet, but the problem that is being addressed by these regulations still exists. So you think this could be applied to a blank sign? I think it could be because the message has nothing to do with the problem. It says for the problem. What's that? I'm sorry. The message on the sign has nothing to do with the problem that is being regulated, that is being addressed. Maybe I could focus just on our small city. The city of Loma Linda in San Bernardino County has about 20,000 residents. It's a small town, but we have large institutions. Loma Linda University, Loma Linda University Medical Center, a children's hospital, a VA hospital. So our population during the daytime swells as tens of thousands of visitors, patients, and employees come to our city. So parking is at a premium, and traffic is horrendous at certain hours of the day. So the city adopted this ordinance as a tool given by the legislature to minimize unnecessary parking, to provide parking for those visitors and employees who need the parking, and to promote the safety of those who are using the public streets. Those concerns have nothing to do with the content of the message that might be placed on one of these signs. So why do they have to write the ordinance to have the words used commercially? Why can't you just say any trailer that's not attached to a vehicle is banned? I mean, you can't do that. Why do these ordinances have to be tied to the term commercial? Well, the ordinance does not use the term commercial. It uses the term advertising. I'm sorry, I used the wrong term. Why do they have to be tied to advertising? The reason for that is that the definition is provided by the state legislature. But the language from the ordinance refers to mobile billboard advertising display and goes on to discuss attached to the wheeled non-motorized vehicle that pulls or transports a sign or a billboard, and then it's for the purpose of advertising. So it talks about the structure, the sign, the billboard, and it also talks about this advertising purpose, which is, I think, as was noted earlier, the dictionary definition is incredibly broad and has nothing to do with the nature of the message. It's the function that we're addressing here. And the fact that this structure is placed on the public streets and interferes with other uses of those streets that are more appropriate and necessary. Those are my comments. I appreciate your time and all. This question should be directed to the Plans Council. But in the district court, are all matters stayed? Because this is an appeal from a preliminary injunction. Is the district court moving ahead on the merits of the case? I think we are. We are not moving forward in the district court. So it just stayed pending the outcome of this appeal. Yes. Okay. Thank you. Ms. Erickson. Good morning, Your Honors. Deputy City Attorney Kim Erickson for the City of Los Angeles. Just before you start your remarks, can I just ask one question about the vehicle code statute that has the definition? Yes. I can't remember from your briefs. Is there any legislative history that we have from the state legislature  No, Your Honor. It was not defined in the legislative history. There's one thing that I just wanted to touch on as far as the U-Haul trailer and how that would not be unlawful under the city ordinances, and that's because the U-Haul trailer is not used for the primary purpose of advertising. The U-Haul trailer is used to transport personal belongings from one place to the other. As such, in the showing respect for animals case, this court has stated that in that particular case, the court addressed this Joe's landscaping business, and if Joe's landscaping was advertising on his truck and he was driving through the streets of West Hollywood, if he's going from one landscaping job to another, it would not be unlawful. However, if he was just using that car and putting it out there just for the primary purpose of advertising, it would be subject to the city ordinances. Also, if the court doesn't believe that everything is an ad for purposes of the ordinances, then these ordinances are still lawful under the commercial speech law, which is the Central Hudson case, and we fully brief that in our... So do you agree that it would apply to a blank sign? Well, Your Honor, if someone happens to want to express emptiness or some type of thought, if it were put out there, if there's some message, then it may apply to that. Okay, that's a fair response, but I meant more to find out whether you agree with your co-counsel that this is really just talking about the physical structure, and so if someone has this blank just because they're on their way to putting the message on there, but they've parked it in the interim, would you say that it still applies? Yes, Your Honor, just because the ordinances cover the physical structures of these billboards out there, and the fact that this billboard is on a trailer and parked on the street, and then all the other, you know, it's a traffic safety issue, aesthetics, it would... So even if they haven't gotten around to putting the actual message on there yet, they just can't park it on the... Correct. Okay. And if there are any other questions, I believe the previous counsels have covered everything, unless the Court has any further questions. No. Okay, thank you. You wanted to come back to the lectern for a moment? Looks like it. Got to revisit your comments. This issue of the blank sign troubles me. If it's a non-motorized vehicle parked there with just a blank sign, and that's all it's for is to hold this blank sign, and it's staying there, that's primarily being put there to show this blank sign. If it's a trailer that's transporting a blank sign to another, you know, to the factory, or from the factory to the artist, or something like that, then it's not primarily for the purpose of holding that blank sign on the side of the street day after day. Well, we're not supposed to figure out the subjective intent of the owner of the thing. No. We're just looking at the physical characteristics, and I understand your co-counsel to be saying that, look, if the thing is designed for the primary purpose of holding a message, even if it happens to be blank, it's still covered. Are you disagreeing with that? No, I agree with that. Okay. All right. Thank you. Thank you. All right. Now we can turn back to Mr. Wallace. You have some time for rebuttal, about three and a half minutes. Thank you, Your Honor. I will try to address some of the questions that have come to the Court. Sure. First, in response to the question you posed, Your Honor, on the current procedural status of the case in the district court, there is not, I believe, a formal stay of order, but as a practical matter, proceedings have been suspended day to day pending the outcome of this appeal, and Judge Wright is expecting a report by the beginning of May on the current status of this appeal from me. Okay. You may have sensed that I was having one of those moments that appellate attorneys just hate, where they're confronted with an argument they know they had an answer for, and at the moment it comes to them at the podium, it did not come to their mind and mouth. And that was your question, Your Honor, concerning the Showing Animals Respect, the West Hollywood case. And we, in fact, addressed that case, admittedly, in a somewhat lengthy footnote in the reply brief. And the issue that you were describing, the notion that advertising is so broadly defined that it were considered to be most any form of speech, was not an issue that was before the Court of Appeal in the Showing Animals Respect case. What the Court of Appeal was concerned with there, which is an issue that comes up frequently in First Amendment litigation, is the distinction between commercial and non-commercial advertising. And the Court held that the West Hollywood Ordinance did not distinguish between commercial and non-commercial, but encompassed all forms of advertising. It did not go so far as to say all forms of advertising means all forms of speech. Well, it adopted the definition, this dictionary definition that I read to you, which to me could be read that broadly to apply to any message. I think that's an overbroad reading of the definition. I think that, and I would love to go back to the dictionary and double check this, I think that the definition that the Court may be referring to is the definition of advertising as a noun, or I'm sorry, as a verb, as opposed to advertising as a noun. The thing advertising is a speech event that is different from other things that are speech events, is what I would propose to the Court. Could I point out, though, that the district court found that advertising refers to an activity, not its content. Do you disagree with that? I do. Well, I don't disagree that that's what the district court held. I do disagree with the district court having reached that conclusion. I don't believe that the language of these ordinances and statutes is open to the construction that advertising is an activity, because you don't display an activity on a vehicle. What it prohibits is advertising displays. An advertising display that's on this non-motorized vehicle for the primary purpose of advertising, which is somewhat tautological in itself. So what is prohibited here is not the activity of advertising per se. It is putting some message that we're going to deem to be advertising on one of these non-motorized vehicles and parking it in the city. Now, if the legislature and the cities had intended to take an entire class of the blank sign that we've been discussing in some way, there is no reason for the legislature not to simply enact a ban on that variety of vehicles, just as you would ban three-wheeled ATVs or something. Look at the definition. I think they may be right about that. I think the primary purpose of advertising, I think, is just describing the physical characteristics of the structure. It's not talking about speech at all. That's why I think when they say that it would apply to a blank sign, it seems to match the text of the definition. Well, it's part of the drafting issues with this statute that it's unclear what primary purpose of advertising actually modifies. Does it refer to the purpose of the entire vehicle, or does it refer to the particular content that's being displayed on it? It is open, I think, and most open to the construction that it is prohibited to have this advertising content on that vehicle for the primary purpose of advertising. And if we start getting into analysis of what are the motivations and purposes of an individual vehicle, then we are clearly getting into content and intent of the owner, and we are asking ourselves, did the owner put this out here because they had a purpose of displaying content and conveying a message? And if we're going to prohibit the displaying of content and messages that are going to be characterized as advertising, we are distinguishing, again, between content that is and isn't advertising and purposes that are and are not advertising related. One could put a vehicle out that looks like an ad, and the owner is subjectively intended to put it out there because they think it's darn purdy. Are we going to allow that to be impounded or not impounded based on the purpose the owner had in mind? I don't think we can do that, and I don't think that it is even remotely fair to the You're over your time. Thank you. Thank you very much. We appreciate your arguments and arguments about the other counsel.
judges: Conlon, Paez, Watford